OFFICE OF CHILD SUPPORT ENFORCEMENT *v.* Jimmy Clyde RAGLAND

96-888                                    954 S.W.2d 218

Supreme Court of Arkansas
Opinion delivered October 16, 1997

*Lori Hoggard*, for appellant.

*The Blagg Law Firm*, by: *Mel Jackson*, for appellee.

ANNABELLE CLINTON IMBER, Justice. At issue in this case is whether service of process under Ark. R. Civ. P. 4 is necessary to obtain a valid default judgment against an obligor for child-support arrearages. The trial court held that the service on the obligor was defective and set aside a default judgment obtained against him. We reverse and hold that personal service of process under Rule 4 was not necessary because the chancery court had continuing personal jurisdiction over the obligor and the obligee asserted no new or additional claims for relief.

Sara Jane Ragland and Jimmy Clyde Ragland were divorced pursuant to a decree entered by the Searcy County Chancery Court on March 16, 1978. Sara Jane was awarded custody of their minor children, and Jimmy Clyde was ordered to pay $200 monthly in child support through the office of the Chancery Clerk. In a contract dated August 15, 1977, and filed on May 22, 1978, Sara Jane assigned her right to child support to the Division of Social Services in consideration for public assistance.

On July 21, 1986, the Child Support Enforcement Unit, in its capacity as assignee, filed a "Motion for Judgment" requesting a judgment in the amount of $14,000 for arrearages unpaid by Jimmy Ragland. OCSE obtained a default judgment in the amount of $14,000 on October 8, 1986. Among other things, the judgment provided that "[Jimmy Ragland's] agent was duly served with a copy of the motion for judgment on 22nd day of July 1986, and no response has been filed herein and [Jimmy Ragland] stands wholly in default."

On October 30, 1995, Jimmy Ragland moved to set aside the default judgment following the institution of income withholding against him. Ragland alleged that the default judgment was "void because of insufficiency of service of process." Ragland

also moved to stay OCSE income withholding and attached an affidavit from the Searcy County Circuit Clerk who reviewed the underlying case file and did not find a "'green card'. . .nor. . . any proof of service upon the Defendant, Jimmy Ragland." In response, OCSE asserted that the service of its "Motion for Judgment" was valid because it was sent to Ragland via certified mail, return receipt requested. OCSE attached the "green card" which showed a July 22, 1986, delivery date, and bore the signature of Sandy Ragland on the "Signature — Agent" line.

On February 20, 1996, the trial court entered an order setting aside the default judgment because of insufficient service of process under Ark. R. Civ. P. 4(d)(8)(A). According to the trial court, OCSE did not comply with the rule's additional requirements that Ragland be served by restricted delivery, and that the record contain the "green card" before entry of the default judgment. OCSE brings the present appeal. The Court of Appeals certified the case to us as involving an interpretation of Rules 4(d)(8)(A) and 5(b) of the Arkansas Rules of Civil Procedure.

For its sole argument on appeal, OCSE argues that the trial court had continuing personal jurisdiction over Ragland, and thus no new service of process under Ark. R. Civ. P. 4 was necessary to obtain a valid default judgment on the past-due arrearages.[1] Because the trial court granted Ragland's motion to set aside the default judgment, we review this ruling for an abuse of discretion. See, e.g., Tharp v. Smith, 326 Ark. 260, 930 S.W.2d 350 (1996); M. v. Clark, 316 Ark. 439, 872 S.W.2d 410 (1994).

One of the earliest Arkansas cases addressing the trial court's continuing personal jurisdiction over the parties in a divorce action is Jones v. Jones, 204 Ark. 654, 163 S.W.2d 528 (1942). In Jones the chancery court awarded the obligee a monthly amount of

---

[1] OCSE does not contest that service was insufficient under Rule 4. Its argument on appeal is limited to the general assertion that the chancellor erred in finding that Rule 4 was the governing rule of service. Inexplicably, OCSE fails to cite Rule 5 in its appellate brief, or otherwise argue which rule of service besides Rule 4(d)(8)(A) is applicable. We nonetheless engage in a comparative analysis of Rules 4 and 5 because OCSE's abstract demonstrates that OCSE argued to the trial court below that the service provisions of Rule 5 governed its "Motion for Judgment."

alimony. The obligor later moved to Florida and fell behind on payments, and the obligee sought a decree for the amount in arrears. While the chancery court recognized that the obligor was delinquent on the payments, it nonetheless refused to render a decree for the arrearage because the entire arrearage had accumulated while the obligor resided in Florida, and no additional personal service of process had been obtained on him.

This court reversed the trial court's determination that additional personal service of process was necessary, characterizing the alimony award as a "continuing general decree" against the obligor that would endure until modified by a change in the condition of the parties. *Id.* Accordingly, the alimony award was not a final determination of the parties' respective rights, and the decree for future payments was not "a final decree upon which an execution might be issued or which might become a lien upon real estate." *Id.* In order to collect on this continuing general decree, the *Jones* court recognized the need to periodically ascertain arrearages and render a decree for the amount due:

> For these purposes the parties to the suit continue to be parties and, being parties already, it would not be necessary to get personal service upon them to carry out and enforce a continuing decree when an attempt is made to reduce the decree to a definite and certain amount, dependent upon whether there should be delinquencies in the payment of the monthly alimony allowed.

*Id.* Thus, the trial court was clearly erroneous in refusing to issue a "decree certain" for the alimony arrearage for lack of additional personal service of process on the obligor. *Id.*

Subsequent to *Jones*, a number of cases have reinforced this court's position that the chancery court has continuing personal jurisdiction over the parties to a divorce with respect to certain support/alimony matters. *See, e.g., Rice v. Rice*, 213 Ark. 981, 214 S.W.2d 235 (1948) (no additional service of process is necessary to collect alimony arrearage under a separate maintenance decree); *Schley v. Dodge*, 206 Ark. 1151, 178 S.W.2d 851 (1944) (actual notice given to a nonresident alimony obligee was sufficient where the obligor petitioned to modify an award arising out of an Arkansas decree rendered when both parties resided in Arkansas).

■   Turning to an analysis under the modern rules of civil procedure, Rule 4 expressly governs the service of the complaint and summons, while Rule 5 governs the service of "every pleading and every other paper" filed after the complaint. Rule 5(a) does require that pleadings asserting any new or additional claims for relief against a party in default be served in the manner provided for service of summons under Rule 4. The crucial inquiry in the present case is which service rule governs OCSE's "Motion for Judgment" filed on July 21, 1986.

The answer to this question turns on the characterization of OCSE's cause of action, and whether it is a new, original cause of action being asserted against Ragland. *Jones* and its progeny suggest that an action to reduce past-due arrearages to an executable judgment is not a "new" cause of action, but instead flows from the original divorce decree. As such, personal jurisdiction over the parties continues without the need for additional service of process.

■   Ragland attempts to distinguish the *Jones* line of cases by arguing that OCSE was not an original party to the action, and thus that "continuing jurisdiction applies only to parties contemplated within the decree." This distinction is not persuasive. OCSE stands in Sara Ragland's shoes as the contractual assignee of her entitlement to support. Indeed, OCSE submitted to the trial court's personal jurisdiction by instituting the proceedings to obtain a judgment. Ragland cites to no authority for the proposition that the assignment of the obligee's rights creates a meaningful difference insofar as the chancery court's continuing personal jurisdiction over him as obligor. Rather, *Jones* suggests that an obligee's attempt to reduce past-due arrearages to judgment where the chancery court has continuing personal jurisdiction over the obligor is not a new or additional claim for relief necessitating new personal service of process.[2] Accordingly, service of OCSE's

---

[2] This characterization is consistent with Ark. Code Ann. § 9-14-234(b) (Supp. 1995), enacted as part of Act 383 of 1989. The statute provides that any child support payment that has accrued under an order providing for the payment of child support shall automatically become a final judgment subject to writ of garnishment or execution. *Id.*

"Motion for Judgment" was governed by Rule 5(b), rather than Rule 4(d)(8)(A).

■ The next question is whether service of OCSE's "Motion for Judgment" was properly made under Rule 5. Rule 5(b) generally requires service upon a party's attorney. However, contemplating the very issue presented in this case, Rule 5(b) adds that service upon a party's attorney is insufficient "in a case where there is a final judgment but the court has continuing jurisdiction."[3] In such cases, service is required to be made to the party. Service upon a party may be made by mailing a copy of the pleading or paper to the party at his last known address, and "service by mail is presumptively complete upon mailing."

■ In the present case, the certificate of service contained within OCSE's "Motion for Judgment" shows that it was mailed to Jim Ragland on July 18, 1986, at P.O. Box 728, Marshall, AR 72650. Moreover, the green card later attached to OCSE's response to Ragland's motion to set aside shows that the article was delivered via certified mail to "Jim Ragland P.O. Box 728, Marshall, AR 72650," on July 22, 1986. Sandy Ragland signed for the article in the box designated "Signature — Agent." Because service of OCSE's "Motion for Judgment" was presumptively complete upon mailing, the trial court abused its discretion in setting aside the default judgment due to insufficient service.

Reversed.

---

[3] The Reporter's Note to Rule 5(b) states that it was amended to incorporate provisions from Ark. Stat. Ann. § 27-362 (Repl. 1979), now deemed superseded. (The Reporter's Note incorrectly cites the relevant statute as Ark. Stat. Ann. § 27-632). Ark. Stat. Ann. § 27-362(b) provided:

> In cases involving divorce, child custody, child support, or other cases wherein the court has continuing jurisdiction, the attorney of record shall be considered as such. . . only until such time of the entry of a final decree. In such cases wherein the court has continuing jurisdiction, it shall be insufficient to show that service was obtained on the attorney of record after the date of entry of the final decree. In such cases, service may be obtained by mailing a copy of the petition by certified mail, return receipt requested, to the address of the other party, or if no address be known, then to the last known address of said party.